IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**LINDA L. SIMS**                                                                                       **PLAINTIFF**

v.                            **CASE NO. 4:10CV00195 BSM**

**DAVE FLETCHER and DOYLE BATEY,**
**Individually AND in their Official Capacities**
**as Employees, Arkansas Department of**
**Veteran Affairs**                                                                                  **DEFENDANTS**

## ORDER

The motion for summary judgment of defendants Dave Fletcher and Doyle Batey [Doc. No. 21] is granted for the reasons set forth below.

### I. BACKGROUND

Viewed in the light most favorable to plaintiff Linda Sims, the uncontroverted facts are as follows. Sims worked for the Arkansas Department of Veterans Affairs ("ADVA") from July 2005 until December 10, 2008. Plaintiff's Verified Responses to Defendants Statement of Material Facts Not in Dispute, ("Dfs. SOF") ¶ 1. She was hired as an executive secretary and later became the personnel manager. *Id.* She was 45 years old at the time she terminated. *Id.*

As personnel manager, Sims was responsible for enrolling eligible ADVA employees in the Arkansas Public Employees Retirement System ("APERS"). *Id.* at ¶ 18. Once enrolled in APERS, an employee becomes a contributory member of the retirement system and a percentage of her salary is withheld and remitted to APERS along with a contribution from the employing agency. *Id.*

Debra Williams, a part-time nurse with ADVA, contacted Sims regarding her eligibility to enroll in APERS and Sims responded by email on May 27, 2008, explaining that Williams was ineligible to enroll because she had not worked enough hours. *Id.* at ¶ 7. Robyn Clark, Sims's supervisor, was copied on this email. *Id.* On June 11, 2008, Andrew Anderson, an Assistant Administrator at the Little Rock Veterans Home, sent an email to Sims asking her to "please help resolve this b/4 it becomes a problem for this valued RN. She's one of our best." *Id.* at ¶ 8. In response, Sims represented that Williams's "challenge has been resolved. When I talked to Ms. Williams last Thursday she was delighted with my findings." *Id.*

On August 30, 2008, Williams complained that her APERS contributions were not being made and threatened legal action. *Id.* at ¶ 9. Williams sent the complaint to Sims, Clark, Anderson, Dave Fletcher, the director of ADVA, and Marion Harris, the director of nursing at the Veterans Home. *Id.* Sims responded on September 3, 2008, that Williams was ineligible to enroll in APERS because APERS uses pay periods as opposed to calendar months to determine eligibility for enrollment. *Id.* at ¶ 10. Sims further responded that June was the only month in which Williams worked the requisite hours for APERS eligibility. *Id.*

Anderson contacted Sims again on October 10, 2008, to determine whether everything had been resolved regarding Williams's APERS eligibility and Sims told her that it had, but that Williams was not satisfied. *Id.* at ¶ 11. On October 15, 2008, Harris copied Sims on an email to Albert Wilson, the Arkansas Veterans Home Administrator, that contained a work

2

schedule verifying that Williams had worked the hours necessary for enrollment in APERS. *Id.* at ¶ 13. On October 16, 2008, Fletcher met with Doyle Batey, the deputy director of ADVA, Clark, and Dawn Stalcup, an APERS employee to discuss Williams's enrollment in APERS. *Id.* at ¶ 14. Stalcup explained that, on more than one occasion, she had explained to Sims that Williams had met the hours requirement for enrollment in APERS. *Id.* On October 22, 2008, Batey asked Sims via email whether Williams had met the hours requirement for enrollment. *Id.* at ¶ 15. Sims, however, failed to respond. *Id.* On October 24, 2008, Batey concluded that Williams was eligible for APERS enrollment and directed Clark to prepare and mail to APERS the necessary paperwork for enrollment. *Id.* Clark complied. *Id.*

On Friday, October 24, 2008, Sims went to the hospital following an automobile accident. *Id.* at ¶ 16, Exhibit A-12. She spent the night in the hospital and was discharged the following day. *Id.* Sims was permitted to remain off work until she returned on Wednesday, October 29, 2008. *Id.* When she returned to work, Sims was informed that she needed to provide verification from her medical provider that she could return to work. *Id.* at ¶ 17. In response to this request, Sims provided her hospital discharge summary, Exhibit A-12, which provides that she had "[n]o restrictions." *Id.* Sims resumed her regular work schedule. *Id.*

Stalcup notified Clark on November 10, 2008, that ADVA was required to pay a delinquent service charge to APERS for failing to withhold contributions from Williams's

paycheck. *Id.* at ¶ 18. Two days later, Clark directed Sims to prepare a new contribution check for Williams and to prepare a memo explaining the payment. *Id.* Sims, however, refused to comply. *Id.* at ¶ 19. Consequently, Stalcup called Clark again on December 9, 2008, and asked whether Williams's contribution had been sent. *Id.* When asked about it, Sims informed Clark that she had not mailed the payment. *Id.* Because Sims failed to make the payment, ADVA was assessed an additional delinquent service charge. *Id.* Clark informed her superior, Batey, of her conversation with Stalcup and of Sims's failure to send in the payment. *Id.* at ¶ 20.

On December 10, 2008, defendants informed Sims that she could resign from her position or be terminated. *Id.* at ¶ 21. Sims signed a resignation letter prepared by Batey and formally resigned. *Id.* On April 7, 2009, Sims filed a charge of discrimination against ADVA with the Equal Employment Opportunity Commission ("EEOC") claiming that she was discharged because she is a woman. On September 15, 2009, she amended the charge to state that she was discharged because of her age as well as her sex. She received her right to sue letter on December 23, 2009. Linda Sims Deposition Exhibits 4-8.

Sims filed suit on March 29, 2010, alleging that: (1) defendants interfered with her rights under the Family Medical Leave Act of 1993 ("FMLA") and retaliated against her for requesting FMLA leave; (2) defendants violated 42 U.S.C. § 1983 and Title VII by discriminating against her on the basis of sex and age; (3) defendants violated the Age Discrimination in Employment Act ("ADEA"); and (4) defendants violated her right to equal

protection under section 1983. Defendants now move for summary judgment on all claims.

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law." *Nelson v. Corr. Med. Servs.*, 533 F.3d 958, 961 (8th Cir. 2008) (citing Fed. R. Civ. P. 56; *Brown v. Fortner*, 518 F.3d 552, 558 (8th Cir. 2008)). Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 247-48 (1986).

The plain language of Rule 56(c) mandates the entry of summary judgment against a non-moving party which, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In considering a motion for summary judgment, all reasonable inferences must be drawn in the light most favorable to the nonmoving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th

Cir. 2007). The evidence is not weighed, and no credibility determinations are made. *Jenkins v. Winter,* 540 F.3d 742, 750, (8th Cir. 2008).

III. DISCUSSION

Summary judgment is granted on all of Sims's claims because there are no genuine issues of material fact in dispute warranting a trial. The record is clear that Sims was asked to resign or be terminated because she was failing to perform her job. Even if one assumes that Sims was doing everything her job required, nothing in this record indicates that her employer fired her because she was a woman or because of her age or that her employer interfered in any way with her rights under the FMLA or retaliated against her for wanting to take FMLA leave.

A. <u>FMLA Claims</u>

Sims claims that defendants not only interfered with her FMLA rights but that they also retaliated against her for attempting to exercise her FMLA rights. *See Phillips v. Mathews*, 547 F.3d 905, 909 (8th Cir. 2008) (providing that FMLA claims may be brought for both interference and retaliation). An interference claim is one in which the plaintiff alleges that her employer denied or interfered with her substantive rights under the FMLA. *Scobey v. Nucor Steel-Arkansas*, 580 F.3d 781, 785 (8th Cir. 2009). A retaliation claim is one in which the plaintiff alleges that her employer discriminated against her for exercising her FMLA rights. *Id.* Sims claims that she requested FMLA leave but that defendants: (1) failed to give her notice of her rights under the FMLA; (2) interfered with the exercise of her

FMLA rights; (3) terminated her in retaliation for exercising her FMLA rights; and (4) gave her a negative employment reference in retaliation for exercising her FMLA rights.

Summary judgment is appropriate on Sims's FMLA claims because they are unsupported by the record.

*1. Notice Requirement*

Before addressing the substance of Sims's FMLA claims, it must be noted that she failed to provide adequate notice to defendants of the need for FMLA leave. *See Phillips v. Mathews*, 547 F.3d 905, 909 (8th Cir. 2008) (to succeed on an FMLA claim, plaintiff must show that she gave her employer notice of her need for FMLA leave). Although she testified in her deposition that she requested FMLA leave, this seems to be a bald statement that is totally unsupported by anything else in the record. Indeed, the only evidence in the record regarding the notice provided to Sims's employer is the hospital's discharge summary providing that Sims had no medical restrictions and could return to work. *See* Exhibit A-12. And this summary was provided upon the request of Sims's employer who notified her that she could return to work only after providing documentation that she was cleared to return to work. Dfs. SOF, ¶ 17.

Although the FMLA does not specify what kind of notice employees are required to give when the need for leave is unforeseeable, it is clear that the relevant federal regulations provide considerable guidance that favor employees. *See Rask v. Fresenius Medical Care*, 509 F.3d 466, 471 (8th Cir. 2007). Notice must be given "as soon as practicable," but "the

employee need not explicitly assert rights under the FMLA or even mention the FMLA" to require the employer to determine whether leave would be covered by the FMLA. 29 C.F.R. § 825.303(a),(b). An employer's duties under the FMLA are not triggered until after the employee provides enough information to put the employer on notice that there may be a need for FMLA leave. *Rask*, 509 F.3d at 471.

Nothing in the record indicates that defendants were on notice of Sims's need for FMLA leave or that Sims in fact needed FMLA. Indeed, her deposition testimony that she asked for FMLA leave is a bald statement that is totally contrary to the record. Indeed, it is undisputed that her employer requested that she provide documentation showing that she was cleared to return to work and that she provided the hospital discharge summary showing that she was cleared to return to work with no restrictions. Therefore, summary judgment is appropriate on her FMLA claims.

*2. Interference Claim*

Nothing indicates that defendants interfered with Sims's rights under the FMLA. To prevail on her interference claim, Sims must show that defendants denied her benefits to which she was entitled under the FMLA. *Stallings v. Hussman Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006) (internal citations omitted). The FMLA permits an eligible employee to take leave if she suffered from "a serious health condition that makes the employee unable to perform the functions of the position[.]" 29 U.S.C. § 2612(1)(D). A serious health condition entitling an employee to FMLA leave means an "illness, injury, impairment or physical or

8

mental condition that involves 'an overnight stay in a hospital, hospice, or residential medical care facility' or continuing treatment by a health care provider[.]" 29 C.F.R. § 835.113 (internal citation omitted). Sims argues that her overnight stay in the hospital following her accident on October 24, 2008, constituted a "serious condition" qualifying her for FMLA leave. In support of this proposition, she relies solely on 29 C.F.R. § 825.303(a),(b) which provides that "[d]epending on the situation" a serious condition may include an employee that "has been hospitalized overnight[.]"

The record does not support Sims's contention because nothing in the record indicates that Sims requested FMLA leave or that her employer had any reason to believe that she needed it. Indeed nothing even remotely establishes that Sims was unable to perform the functions of her position following her release from the hospital. Following her discharge from the hospital, she took two days off and then continued to work until the date of her termination. Moreover, when she returned to work, she presented defendants with the hospital's discharge summary stating that she could return to work with no restrictions.

Sims's contention that defendants interfered with her right to take FMLA leave is unsupported and summary judgment is therefore appropriate.

### 3. Retaliation Claim

Sims's retaliation claim fails for largely the same reasons as set forth above. She alleges that after her hospitalization and return to work, she was subjected to stricter scrutiny which eventually led to her termination and negative employment reference. The record,

however, simply does not support these contentions and summary judgment is therefore appropriate.

B.     Sex Discrimination Claims

Although there is no direct evidence of sex discrimination, Sims contends that she has presented circumstantial evidence of discrimination. Her circumstantial evidence is analyzed through the *McDonnell Douglas* burden shifting analysis. *See McDonnell Douglas v. Green*, 411 U.S. 792 (1973). To prove sex discrimination, Sims must first set forth the elements of a *prima facie* case. If she establishes a *prima facie* case, the burden of production then shifts to defendants to articulate a non discriminatory reason for terminating her. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). If defendants come forward with a legitimate, nondiscriminatory reason, then the burden shifts back to Sims to prove by a preponderance of the evidence that the proffered reason is merely a pretext for discrimination. *Id.*

Whether Sims has established a *prima facie* case of discrimination is not addressed because the defendants have obviously met their burden of articulating a non-discriminatory reason for firing her. Defendants maintain that Sims was asked to resign or be terminated because she failed to comply with the directives of her superiors, falsely stated that she had completed a number of tasks which she actually failed to do, and that her actions cost the her employer thousands of dollars in fees and penalties.

To overcome defendants' legitimate, nondiscriminatory reasons for terminating her,

Sims must prove that the reasons offered are merely pretext for discrimination. To prove pretext, Sims has show that another similarly situated employee who is not a member of a protected class was treated differently. *Lanear v. Safeway Grocery*, 843 F.3d 298, 300–301 (8th Cir. 1988). She is required to show that the comparator was "similarly situated in all relevant respects." *Smith v. Allen Health Systems, Inc.*, 302 F.3d 827, 835 (8th Cir. 2002). This burden rests entirely on Sims and defendants need not demonstrate the dissimilarity of the comparator. *See Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 972 (8th Cir. 1994). In deciding whether a comparator is similarly situated, the totality of the circumstances must be considered. Specifically, the comparator's conduct must be "of comparable seriousness" to that of the plaintiff. *See Lanear v. Safeway Grocery*, 843 F.2d 298, 301 (8th Cir. 1988).

To prove pretext, Sims points to two male administrators that she claims are comparators. These administrators work at separate veterans homes in Arkansas that fall under ADVA where Sims was employed. Sims admits that the relevant job responsibilities of these men were different than hers in that their responsibilities included: (1) caring for veterans; (2) supervising and interacting with patients and other nurses; and (3) supervising the general operation of the nursing homes including human resource functions and financial management. Unlike the comparators, Sims was a personnel manager who was primarily responsible for administering employee payroll and benefits. Therefore, Sims and the comparators were not similarly-situated and she cannot use them to show pretext.

Even if one determines that the comparators were similarly situated to Sims, she has

11

failed to show that she and the comparators were treated differently. This is true because both comparators were fired for deficient work performance, just as she was fired for consistently failing to adequately perform her job. Further, both comparators were replaced by women, which militates against her claim of sex discrimination.

C.     Age Discrimination Claim

Summary judgment is granted as to Sims's claims for age discrimination because she has abandoned those claims.

D.     Immunity

Qualified immunity, per Sims's 42 U.S.C. § 1983 claim, will not be addressed because summary judgment is granted on the merits of her claim for the reasons set forth in section III.B above.

## IV. CONCLUSION

For all of these reasons, defendants' motion for summary judgment [Doc. No. 21] is granted, and Sims's claims against the defendants are dismissed with prejudice.

Dated this 6th day of September 2011.

_____
UNITED STATES DISTRICT JUDGE